## PEOPLE *ex rel.* FROST v. WILSON.

*Elections — invalid vote — Constitutional law — registry law — power of legislature to regulate elections — Statutory construction — legislature cannot direct court to construe.*

The provisions of the registry law (Laws 1872, chap. 570, § 6), that "no vote shall be received at any annual election in this State, unless the name of the person offering it be on said register, made and completed as hereinbefore provided ; * * * and any vote which shall be received by said inspectors of election in contravention of this section, shall be void," etc., *held*, to be constitutional.

The legislature does not derive its authority to make laws regulating the manner in which elections shall be conducted from art. 2, § 4, of the constitution, which declares that it shall provide for ascertaining by proper proofs who are voters, but does it by virtue of its general legislative power.

The section of the registry law mentioned, provides that "This section shall be taken and held by every judicial and other tribunal as mandatory and not directory." *Held*, (1) that while the legislature has no power to require the courts to construe a statute according to its direction, yet the direction in question was a clear expression of the legislative intent, and effect must be given to it.

The preliminary register for the second ward of Rochester, at the general election in November, 1873, was copied from the spring election poll list, of that year, instead of that of the general election in the fall of 1872. *Held*, to render the vote in that ward, at the fall election in 1873, void.

MOTION by defendant for a new trial after a verdict directed in favor of plaintiff, at the circuit.

The action was in the nature of a writ of *quo warranto*, brought by the people upon the relation of Edward A. Frost, and Edward

A. Frost against John H. Wilson, to oust the defendant from the office of clerk of Monroe county, and declare the plaintiff and relator Frost elected thereto.

The principal question, and the only one discussed in the opinion, was in relation to the regularity of the vote in the second ward of the city of Rochester. If the vote in that ward was thrown out it would leave the highest number of votes in favor of said Frost for the office in question ; if counted, the defendant would have a majority. Sufficient facts appear in the opinion.

*H. H. Woodward* and *H. R. Selden,* for plaintiffs.

*J. C. Cochrane,* for defendant, cited *People* v. *Clute,* 50 N. Y. 452 ; *People* v. *Cook,* 8 id. 67 ; *People* v. *Pease,* 30 Barb. 588 ; S. C., 27 N. Y. 45.

MULLIN, P. J. It was conclusively established on the trial that the register of the election of the second ward of the city of Rochester, made in October preceding the general election in the year 1873, was not made up from the poll list kept at the election in 1872, as required by sections 1 and 2 of chapter 570, of the Laws of 1872. By the sixth section of said chapter it is declared that "no vote shall be received at any annual election in this State unless the name of the person offering to vote be on the said register, made and completed as hereinbefore provided, preceding the election. * * * This section shall be taken and held by every judicial or other tribunal as mandatory and not directory, and any vote which shall be received by said inspectors of election in contravention of this section, shall be void, and shall be rejected from the count in any legislative or judicial scrutiny into any result of the election."

In obedience to the mandate of this section the entire vote of the second ward must be rejected in ascertaining which of the candidates for the office of clerk of the county of Monroe was elected at the said election, unless the defect to which I have referred has been cured or may be disregarded.

I confine the inquiry to the one defect above specified, out of several, which have been insisted upon by plaintiff's counsel, because it is clearly established, and is the most important of the defects to which our attention has been called. The defendant's counsel

insisted, 1st. That if it shall be held that the sixth section above quoted must be so construed as to deprive the electors of the ward of their votes at said election because of the neglect of the inspectors to register the voters as required by said act, it is unconstitutional and void.

His argument is that the legislature has power by the constitution to ascertain by proper proof who are voters. The preliminary register provided for by sections 1 and 2 of the act of 1872, is not in any sense the proofs contemplated by the constitution. It is prepared *ex parte* — no hearing is had or evidence given, and no determination as to who are electors. Irregularities or omissions, if any occur in making the preliminary register, are entirely immaterial, and cannot affect the right of the elector to vote.

The right of suffrage is not conferred by the constitution. It is recognized as an existing right, and the constitution either declares the qualifications that the voter must possess in order to entitle him to exercise the right, or it authorizes the legislature to provide for ascertaining who are entitled to vote.

It is not under this provision of the constitution that the legislature makes laws regulating the manner in which elections shall be conducted ; that is done by virtue of its general legislative power.

When the constitution directs the election of public officers by the people, it is the duty of the legislature to pass laws designating the time and place for holding such election, and designating the officers who shall conduct it, and by whom the results thereof shall be ascertained and determined. These subjects are left entirely to the discretion of the legislature, and unless it shall take away or unreasonably restrict the right of suffrage, the law cannot be said to be in violation of the constitution. The power of the legislature to pass a registry law whereby the name of every elector is required to be placed upon a register before the day of voting, in order to entitle him to vote, is not denied. It enables the legal voter to protect the ballot-box against the votes of persons, not legally entitled to vote, and to be of any substantial benefit it must be made and completed a sufficient length of time before the election to allow an investigation of the qualification of the persons whose names are registered. To render the register of any value there must be some forfeiture if the person who desires to vote has not procured his name to be registered, and that forfeiture should be as it is, of his right to vote at the election for which such register

People ex rel. Frost v. Wilson.

is prepared. To allow names to be entered upon the list at the time the votes are offered, is to defeat the purpose which the legislature had in view in framing the law, namely, the prevention of illegal voting. The measures that shall be adopted to secure that end are entirely in the discretion of the legislature.

The defendant's counsel seems to concede that when the loss of the right is the result of the act, or omission of the elector himself, the law which authorized it is not in violation of the constitution. But he insists that the right cannot be lost by the act or omission of officers appointed to make the register.

The conduct of elections, like all other governmental operations, must be intrusted to officers elected for the purpose, and the rights of the electors may be made to depend upon the manner in which those officers discharge their duties. I am unable to perceive any distinction in this respect between the political and other rights of the citizen.

The charters of municipal corporations frequently require the persons applying for the laying out of streets or the making of sewers or other local improvements, to conform to provisions of the charter regulating the laying out of streets and making other improvements. In the course of such proceedings, clerks, assessors, the common council, or other legislative body are required to perform certain duties, and if not done at the time or in the manner required, the proceeding is illegal, and persons applying fail to obtain the benefit of the street or improvement, and yet the fault is not attributable to the applicants. Every citizen who is a party to a lawsuit has the right to have a court held, a jury summoned and impaneled to try it when reached in its order. But if the jury has not been legally drawn or summoned, the cause cannot be tried, and the party's right is gone without any fault on his part. A mortgagee leaves a mortgage with a county clerk to be recorded, but if the clerk either omits to record it, or records it as being for a much less sum than the actual one, the lien is lost or the debt reduced, and this without fault on the part of the mortgagee.

It is unnecessary to multiply examples. The law books are full of them. If the legislature should assume to declare that if a citizen's name was not placed on the register preceding a general election, he should forever thereafter, or for any considerable time be deprived of the right of suffrage, the provision declaring such forfeiture would, it seems to me, be void. But whether because it

would be in violation of the constitution or of natural right is not so clear. It would be assuming judicial power which the legislature cannot exercise. It may, however, deprive him of his right to vote at the election for which such register is made, and this without regard to whether the voter or the officers preparing the register is responsible for the omission of his name.

If the provisions of the act of 1870 could be treated as directory merely, the register made for the election in 1873 might, and probably would, be deemed a sufficient compliance with the act to require the votes given in the second ward to be counted and allowed. But the language of the 6th section is too plain to admit of any such construction. It declares that no vote shall be received at any election unless the name of the person offering it be on the register *made and completed* as thereinbefore provided. It is not enough that the name be on a register made by the inspectors, it must be on a register made and completed as required by said act. The register in question was not made in conformity with the act.

I was of the opinion on first examining the case, that the provisions of the statute prescribing the manner in which the register should be made up, might be treated as directory merely, and that a substantial compliance therewith was all that was necessary, and that the mandate of the 6th section of the act might be complied with by limiting it to the requirement that no vote should be received from a person whose name was not found on the register. Could such a construction be given to the section, it would avoid the injustice that will be done in holding the act mandatory as to the manner of making up the register especially, where no wrong is intended and no illegal votes received or legal votes excluded. But the language of the section is too plain to admit of such a construction.

I do not think the legislature has any power to require the court to construe a statute according to its directions. It is the province of the courts to construe statutes according to the rules of construction they have established for their interpretation, but the legislature may, I have no doubt, declare the purpose it intended to attain by the act, and it is the duty of the courts to so construe it as to effect the object intended, if it can be done consistently with the language used, but beyond this the legislature cannot go. To permit it to prescribe rules of construction would be to assume judicial

as well as legislative power, thus practically to destroy one of the departments of the government.

When the courts hold the provisions of a statute to be directory and not mandatory, it is because such a construction will give effect to the intention of the legislature, without producing the mischiefs that would result from requiring a strict compliance with the statute. When a statute affecting the public requires an act to be done within a given time or in a particular manner, and there are no prohibitions against doing it at some other time or in some other manner, the act is held to be directory. But it is the province of the legislature to declare that if the statute is not strictly complied with, the proceedings under it shall be void. It is immaterial in what manner the intention to make the provision of the act mandatory is declared, provided it is clearly expressed. Had the act of 1870 provided that the inspectors of election should conform strictly to its provisions, or their acts would be void, the courts would have been bound to so construe the statute; and although the legislature might not have power to require the courts to construe the act as mandatory, and not directory, yet such a requirement was a clear expression of the legislative intent and effect must be given to it.

As the court rejected all the votes of the second ward to ascertain which of the two candidates for clerk received the largest number of votes in the county, the whole number of votes taken in said ward must be deducted from the whole number of votes for clerk in the county, and deducting the vote given in said ward for each of the contestants from the aggregate votes for each in the other towns and wards of the county, the person elected will be ascertained. The relator is thus shown to be entitled to the office.

There was some conflict in the evidence as to whether the register was made from the poll list of the charter election held in the spring of 1873, or from that used at the general election in the fall of 1872, and this question the defendant's counsel asked the court to submit to the jury. The court refused and the defendant's counsel excepted.

Monroe, one of the inspectors, testified that he attended the meeting to prepare the preliminary register, and that he and Brooks, another inspector, in the absence of Lathrop, the third inspector, proceeded to make copies of what he thinks was the register of the charter election in the spring of 1873.

His attention was called to the paper they were copying from by one Jones about 4 P. M. of the second day of the meeting. It was then too late in the day to get the poll list of 1872 from the city clerk's office, and they proceeded to complete the list without it from the paper before them. At the second meeting of the inspectors, just preceding the election, the witness informed Lathrop of the mistake in copying from the spring poll list. On the cross-examination of the witness he testified that he and Brooks examined the paper they were copying from when told it was the spring poll list and not the poll list of the fall of 1872.

Horace Jones testified that he was present when the inspectors were making the preliminary register and saw the papers the names of voters were copied from, and it was the poll list of the spring election, and he called the attention of Monroe and Brooks to it. Mr. Lathrop was called by the defendant and testified that he was one of the inspectors of the election in the second ward ; that he had to leave the city so that he could not attend at the making of the preliminary register; he went to the clerk's office and got the blank's and poll list of the last fall's election and left them with Brooks ; he was not informed by either Jones or Monroe that the preliminary register was made from the wrong list; the paper used to copy from was delivered to him by the clerk as the poll list of the fall election in 1872, and he supposed it was. Thomas Brooks was called by defendant and testified that he was one of the inspectors and attended the meeting to prepare the register for the fall election in 1873 ; he received from Lathrop papers that he had received from the clerk's office and took them to the place where the inspectors met and gave them to Monroe ; they had a book marked November, 1872 ; don't know what the paper was, whether poll list or what it was ; he had no notice that the poll list of the election of 1872 was not there, nor did Jones or Monroe inform him that it was not there, and he supposed the paper used was the poll list of 1872 ; he did not know what paper the names were copied from, as Monroe held the paper and called off the names and the witness wrote them down.

This evidence would seem to prove that the poll list of 1872 was not used if the witnesses on the part of the plaintiff are entitled to credit. They swear in substance that they knew the paper used to copy the names of voters from was the poll list of the spring election and was not the poll list of the election of 1872. Mr.

Lathrop received a paper from the clerk which he was told was the poll list of 1872, and believed to be such list. Brooks did not examine the paper and has no knowledge whether it was the spring list of 1873 or that of the fall of 1872.

Had the evidence stopped here there would be some ground for claiming that the question should be submitted to the jury. But it was shown that a large number of names was on the poll list of 1872 not on the preliminary register of 1873. How could this omission occur if the poll list of 1872 had been used ? None of the inspectors testify to any mistake, and it would be almost impossible that any such mistake could honestly occur, and it is conceded that the inspectors were not guilty of any fraud or intentional wrong.

I am of the opinion that the request to submit the case to the jury was properly refused.

I have not examined the evidence in regard to the proceedings of the inspectors of the eleventh ward. The votes of that ward have been allowed to the defendant, and unless he was entitled to those in the second ward he would not have a majority of the votes and would not be elected. If the votes of the second ward are rejected the plaintiff was elected, and it is immaterial to him whether the votes of the eleventh ward were or were not properly allowed to the defendant.

There must be judgment on the verdict in favor of the plaintiff.

*Judgment accordingly.*